Case number 24-2017, Sherrell King v. City of Lincoln Park, MI at all, or arguments not to exceed 15 minutes per side, Ms. DeLorenzo, you may proceed for the appellant. Good morning. Good morning, Your Honors. Josephine DeLorenzo on behalf of Defendant Nick Kosmulski. I believe I reserved two minutes for rebuttal, if that's okay. Very well. So we're asking that you reverse the district court's order denying summary judgment because there was no constitutional violation, or at a minimum, Officer Kosmulski's entitled to qualified immunity. The facts aren't in dispute, for the most part, because we do have the video. So the question is whether Officer Kosmulski was constitutionally required to check the handcuffs again after Ms. King's second comment that the handcuffs hurt. So we say the answer is no because both the Fourth Amendment analysis and the qualified immunity analysis requires consideration of the specific facts. What's the best authority you have that for a second request to loosen tight handcuffs, there is no duty to check? So it seems that, and this would get more into the qualified immunity part of it, the best case for the just straight up Fourth Amendment is the FETS case because it says, although it is unpublished, it did recognize that there was no constitutional requirement for an officer to stop and investigate each and every complaint about the handcuffs and make a new judgment regarding whether they're too tight. And I did think it's important under the Fourth Amendment analysis that in Graham v. Conner, the Supreme Court recognized that police officers have to make judgment calls. So they made a judgment and they thought that was good and they didn't need to check it again a minute later. So that's why I think there's no Fourth Amendment violation. Now, if you disagree and we have to get into the qualified immunity, I still think FETS is the best case. And I recognize that we have the Baines case that said that FETS and a couple of the other cases earlier on that relied on it were disfavored. But I would point out that this court still cites to FETS. And one of the reasons that the Baines court thought that FETS shouldn't control is they said, well, the Supreme Court says we don't have to be that specific. But there have been more recent cases, and I did cite those in my brief, but this court in 2022, it's Bell v. City of Southfield said, when it comes to excessive force, the Supreme Court has repeatedly told us that specific cases are especially important. And the two cases that it cited to both came after Baines. So there's City of Telequa v. Bond, that's 2021 from the Supreme Court, and it says such specificity is especially important in the Fourth Amendment context. Then there's also Casella v. Hughes, which is the Supreme Court, and it said use of excessive force is an area of the law in which the result very much depends on the facts of each case. Okay. I mean, it does, but I think it's quite clear our law on excessive force for handcuffing, I'm quoting from Morrison v. Board of Green Township, that for claims alleging an officer's handcuffing was excessive force, the plaintiff must show one, he complained that the handcuffs were too tight, two, the officers ignored the complaint, and three, plaintiff experienced some physical injury resulting from the handcuffing. Those are the three elements, and they're all satisfied here, are they not? Well, he did disregard the second comment, but not the first one, and they did all those things for her. Sure. You say only the first complaint has to be acknowledged, but you have no authority for  Well, I guess I do in the FETS case, because it says you don't have to check every single time. I mean, I guess you'd have to draw a line, and maybe you'll draw that line here and say, well, it was only one other comment, and they should have checked again, but you could imagine a situation where someone maybe keeps complaining. Can you speak about that a little bit? What would be the problem of drawing a rule that says you have to, why not draw a rule that says you just have to check every time? I mean, I guess it would depend on the person that you're handcuffing. Maybe they might be exaggerating, or maybe they think it's tight. Isn't that a factual issue for the jury? I mean, right now, you want qualified immunity, so you don't go to trial. I've seen the video, and I see that the officers are very respectful to Ms. King, and the officer may win at trial, but the question is whether they have enough evidence to get past summary judgment, and why don't they? Why isn't this a factual matter? Well, I guess the fact's not in dispute. He didn't check the second time, but it's a judgment call. I mean, that's what the Fourth Amendment is. The court said sometimes they have to make a split-second decision. He did check it, and I watched the video again a couple of times yesterday, and I didn't even pick up on this, but maybe you all did. When they were handcuffing her the first time, Officer Kosmolsky actually says to the other officer, can you check just to make sure that it wasn't tight? So, I mean, they had literally just done it, and it was sort of a passing comment when she got in, and I think if you look at the police chief's testimony, he said it's not uncommon for when they sit back on the handcuffs, it might kind of hurt, but she didn't say anything after that, and then she didn't look ... Well, they couldn't necessarily see her because they were outside the car doing things, but I don't know. I mean, we have that one case that says that, and this is their judgment call, and so I think most of the cases, in fact, all the cases I think that we discussed, either the officers didn't check or there was a question of fact whether they did. Do we have any cases that involve multiple checks other than FETs? Do we have other cases that say there's a requirement that you must check multiple times even if only a minute or so has passed in between? If there was, I didn't find it, and some of the other considerations were just their conduct. So in other words, our cases say you must check after a complaint, but those are all, perhaps, situations where there's one complaint. We don't have a case where there are multiple complaints. Well, we have cases where there's multiple complaints that they never checked, so yes, there's one where they did check. And they didn't check any of the complaint, first time, second time, third time? Correct. No checking. There was none. So yeah, we don't have a case where they checked once, or at least not that I found. I'm sure someone will tell me if I'm wrong, but yeah, I didn't find one where there was a second request that was denied, so that's why this one, I think, is different, and they made that judgment, and they thought that it was okay. And I guess I would say the one other good case for us, I guess, is even though they found against the officer, it was this case in 2019, it's Rudolph versus Babinec, and it's cited to FETS. Now, again, in that case, the plaintiff complained multiple times, and they never checked, but the court cited FETS, and it said that it's important because the court should consider the officer's conduct as a whole to determine whether they acted reasonably under the circumstances. And in that case, the issue was, well, the officer were trying to say, well, he was only in handcuffs for 10 minutes, and the court said conduct, not time, is the measurement of a violation. So I think you just have to realize, like you just said, I mean, the officer's conduct, I mean, they were very patient, and I would say kind to her. I mean, they weren't rude at all. They were, you know, they went out of their way, well, we'll check. Maybe it wasn't really you that got all the warrants in Detroit. I mean, they did everything for her. So if we're looking at their conduct, they weren't trying to do anything to hurt her in this case. So I guess that's all I'd say. I would say that was our other good case. That was a 2019 published case, actually. I'm sorry. Which case is that? It's Rudolph v. Babinec. It's from this court, published in 2019. Do you, should I give you the site? Nope. Okay. So I think that's all I have to say on this. Well, you're also appealing the denial of government immunity under Michigan law.  So I was going to rely on my brief for that, but I can sum it up. We actually think that it should have been dismissed because she's basing her claim purely on intentional conduct. So that should be an intentional tort, not under the gross negligence standard. But my argument is basically the same for whatever. What do you mean by it's based on intentional conduct? This is a situation where, as you were expressing, the officers were sort of nice. They didn't put the handcuffs on her to intentionally hurt her. The point is that when she complained, they didn't loosen it. So how is that intentional conduct? Well, their allegations are intentional. They're saying that they did it, basically they're saying they did it on purpose. At least that's how I- They didn't intend to harm her. No, they didn't. That's the point. There's no intent to harm. There's an alleged constitutional violation, but it wasn't that they intended to cause harm to her. No, well, I don't think that at all. I'm just saying that's what the allegations seem to imply. But if we do consider this negligent conduct, it doesn't come anywhere near the gross negligence standard under Michigan law. I mean, that's a pretty demanding standard. Isn't that also a question of fact? Well, under Michigan law, just if it's allegations of negligence, you can't get to gross negligence. It has to be that standard. Conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. I mean, I think you can see that- Isn't that a question of law for the judge under Michigan law? It is, and I think you can plainly see that on the video. So I don't think the state law claim at all should go to the jury. Isn't it a little odd to say that conduct doesn't rise to the standard of gross negligence under Michigan law, which maybe I agree with that, but it is a Fourth Amendment violation? It just seems odd that it's a constitutional violation that doesn't at least meet the Michigan gross negligence standard. Do you think there's a disconnect between the two? Well, there could be, I guess, if we're just ... Because of that test that's in for Morrison. So that just says straight up we have to meet these three factors, but the rest of the Fourth Amendment law seems ... It talks more about ... It was their on-the-spot judgment. You don't look back in hindsight. So maybe that is why there is the disconnect, but the Michigan standard is pretty clear. And also, even if- So in other words, you're saying maybe ... I mean, it's not for us to do anything about, but maybe the Morrison Fourth Amendment standard is not the correct standard? Well, I mean, I guess it does matter whether they ignored or not, but when you're looking, if you're doing the qualified immunity analysis and the Fourth Amendment, you still have to look at the circumstances. So what does ignoring mean? I mean, if they just didn't do anything at all and she's crying out in pain, okay, that's ignoring. But here they had already checked and this is a new officer and he had the other guy double-checked and he thought it was fine, so he didn't think that he needed to do it again. Well, we can't take into account the fact that he's a new officer, right? We have to say a reasonable officer under the circumstances. And I don't think the circumstances include it's your first day on the job. I assume we assume the median officer. Right. But he did have, I guess, backup. He had two people check so that whether it was a veteran officer or a new officer, he got it double-checked so he could maybe be confident in their decision that it was fine. So, I think that's all I have unless there's other questions.  Thank you. You'll have your two minutes rebuttal. Okay. Thank you. Good morning. Good morning. May it please the Court, my name is Joel Sklar, I represent the appellee, Sherrell King. This is a case that has issues of fact. This is a case that's properly before the jury under the standards that we use here. Morrison is very clear. Miss King did complain. The officers never loosened her handcuffs, especially after her second complaint. Officer Kosmowski simply closed the door. Here Morrison is fulfilled. There is issues of fact that the trial court properly filed precluded summary judgment. As far as the gross negligence claim, there is Oliver v. Smith that has held that applying handcuffs too tightly is also grossly negligent and can be pled. We have done that. The trial court made the proper decision based on the law and the facts. This is a jury case, and this is where it should go, and I am more than happy to answer any questions. I know that in my brief I've answered, I thought, everything that was brought up, but I'll be more than happy to answer any questions the court has. Your position is you can claim both a constitutional violation and gross negligence at the same time for the same actions? Yes. Is that it? Here's what I understand the law to be, is that if the gross negligence claim is completely predicated on the Fourth Amendment claim that . . . It is here, is it? Well, not completely predicated. Really? Okay. If it is completely predicated, then you concede that you can't have both claims, you can't have both gross negligence and the constitutional claim? I think . . . Do you concede that? No. I don't. I think that under . . . you can have both claims. You can certainly . . . again, intent isn't an issue in these cases. As far as the Fourth Amendment claim, there is no intent requirement under Morrison or any other case. For the gross negligence claim, really what the allegation is, is that surely by the second complaint when she's in the backseat of the car and she's saying this expletive is cutting into my wrist and she's in distress, simply walking away knowing that an injury is going to continue to ripen, and I think that's pretty certain, that is gross negligence. The two cases . . . Any case under Michigan law saying that that would amount to gross negligence? Oliver v. Smith, which I . . . Well, I'm not asking . . . what I'm saying is a circumstance like this that would amount to gross negligence. I mean, I thought in Oliver they didn't find gross negligence. Am I wrong about that? In Oliver v. Smith, it's a matter of law, correct. But . . .  I'm just saying . . . So first of all, it is a question of law for the judge under Michigan law. And secondly, I'm asking, are there situations, in fact, circumstances like this where the Michigan courts have said that amounts to gross negligence? Because in my experience, there are very few things that amount to gross negligence under Get Law . . .  . . . as far as the Michigan courts have determined that. I can't cite you other than to Oliver v. Smith . . . Where they found it was not grossly negligent. Right, but the facts aren't exactly identical to this. This is a really clean case, to be honest with you. It's not complex. If you look at the context, there's really nothing else going on. In the cases at the defense sites, typically there's other things going on. Pepper sprays, people are resisting, they have to attend to other arrestees or suspects. That isn't this case. This case is a relaxed, non-confrontational, unremarkable traffic stop that ends up ruining somebody's, you know, destroying her right upper extremity because of too tight handcuffs. And Morrison suggests a little bit more. Morrison says, listen, if you complain about too tight handcuffs, look at them and loosen them. Certainly by the second . . . because it suggests that when you first put them on, this is what Baines suggests, that maybe they were on too tight the first time. But certainly by the second time, when you complain that this expletive is cutting into my wrist, you know that there is pain, you know that there is a physical distress, you know that the handcuffs are too tight, and you have an obligation to loosen them. And it's undisputed they were never loosened. I think an officer has . . . They were never checked. Never checked. I don't think they were ever checked. They say they were.  The second time, if they had checked . . . Oh, never checked the second time. And still didn't. And in their judgment thought that they were fine. That would be a different case. But there was no even . . . Right. They ignored the second . . . Right. You can't . . . correct. You can't simply listen to the complaint, acknowledge the complaint, and shut the door and walk away. Is there any limit on that? So what if they had checked the second time? Right, when she made her complaint the second time, and they checked, and they stuck their finger in between the handcuffs, they checked, everything's fine. And a minute later, she says, they're not fine, they have to stop the car, they check again. We're good. Thirty seconds later, stop the car again. Is there some . . . you can see where this is going. I got it. There's no constitutional limit. But I think the reasonableness of the officer becomes more clear, especially if the officer has loosened the cuffs. There will be no physical remnant of the cuffs. There will not be rings. There will not be indentations. There won't be numbness. There will be . . . You know, this is just . . . the suspect is trying to harass me. Oh, that's . . . And makes the judgment, and guesses wrong. Right? He's wrong, so now the person is hurt. That's a constitutional violation? I think there would be an issue of fact for the jury to make that determination. The courts have been real clear. There is no bright-line test about how much you have to complain, how vociferous you have to be, how much you have to scream or yell or cry. It's a very simple calculus. Did you complain of tightness? Every time you have to stop the cart. No, not every time. And I'll explain why that is. Like, if you're wrong, you're always going to be liable. Not true. Let's assume that, again, just like the cases that the Sixth Court has had, if there's a million other things going on, you're in a riot. Stuff is happening. You cannot attend to that person. They may complain and complain and complain. You may not be able to attend, or you may be able to attend once. Go. It depends on the context, because there cannot be a bright-line test. You know, there's an argument that if the handcuffs are fixed too tightly, they're gratuitously a fix. And the prohibition against gratuitous force is well-known. But are there circumstances where someone may complain constantly and it's just ridiculous? Sure. But if you're wrong, I think that there's, you know, you take a risk at that. It may end up being, again, another issue of fact. Were the officer's conduct? So what I hear you saying sounds pretty reasonable, that it is a totality-of-the-circumstances test. It's not simply a bright line, you must always check every time. Because you could read Morrison to say the officer must check every time. I agree. No matter what. I don't think the law is that rigid, and this Court hasn't applied it so rigidly. Again, the case of the defendant's sites where people did not have their cuffs checked, again, they're en route to a police station, they're going to a hospital, there are other things going on. In this setting, none of those apply. It's a very simple, clean, unremarkable stop that ends up having a very remarkable result. So any questions from the Court? I'll be happy. Any further questions? Okay. Thank you so much, Your Honors. It's always a pleasure. Thank you. Thank you, Counsel. All right. Two minutes rebuttal. Thank you, Your Honor. I don't think it will take that long. I don't really have anything to add unless you have other questions. The only thing I would say is for the Michigan law, I couldn't find any gross negligence cases that dealt exactly with this. I think the only case I said was under the intentional tort standard. And in that, again, it was a case where there were multiple complaints, and also that officer used a racial slur. So they found that would be evidence of malice. But we don't have anything like that here. Okay. Very good. All right. Case will be submitted.